COUNTRY SERVICE & SUPPLY COMPANY, Plaintiff-Appellant, *v.* HARRIS TRUST & SAVINGS BANK, Trustee, *et al.*, Defendants-Appellees.

Second District    No. 80-924

Opinion filed December 28, 1981.

Fred Wieszmann, of Northbrook, for appellant.

Lewis W. Schlifkin, of Berman, Roberts and Kelly, of Chicago, for appellees.

JUSTICE NASH delivered the opinion of the court:

Plaintiff, Country Service & Supply Co. (Country Service), appeals from a summary judgment entered in favor of defendant, Harris Trust & Savings Bank, as trustee under Trust No. 33867 (Harris), dismissing plaintiff's complaint to foreclose a mechanics' lien against defendant's property. Country Service contends that summary judgment was improperly granted because there existed genuine issues of material fact.

As disclosed by the pleadings, affidavits, exhibits and depositions on file the pertinent facts are as follows: In September 1973 Country Service

entered into a subcontract with defendant-contractor, Andrew A. Malone & Co. (Malone), to perform certain excavation work on a project known as Knollwood Planned Development in Lake County. Under the contract its work was to be performed on a time and material basis whereby Country Service would be paid a fixed hourly rate for the rental of its excavation and grading machinery and operators. The Knollwood Planned Development was being constructed on land which included a tract then and now owned by defendant Harris which was then being purchased from Harris by Malone under a contract. (The contract was subsequently forfeited.) Country Service performed extensive excavation and earth work on the Knollwood project, much of which was carried out on areas which were subsequently conveyed out by the owners and are not the subject of this action. A substantial amount of the work was also performed on the tract owned by Harris and referred to by the parties as "Phase 3." The work on Phase 3 consisted primarily of excavations to create water retention lakes and a roadway required by the village of Lake Zurich to permit development of the tract. From time to time between June 4, 1974, and April 18, 1975, as the work by Country Service progressed on Phase 3, the subcontractor, Malone, issued payout orders to it which were submitted, together with lien waivers and contractor's affidavits executed by Country Service, to the lending agency, the Bank of Commerce and Industry of Chicago, for payment. Prior to April 18, 1975, plaintiff thus received total payments of $145,000 for work it had performed on Phase 3. When further payments for work performed were not forthcoming, however, Country Service perfected its mechanics' lien by filing a claim for lien as to Phase 3 with the recorder of deeds of Lake County and on September 13, 1976, filed a complaint to foreclose its lien against that tract.

Harris answered the complaint admitting ownership of a portion of the premises improved by Country Service, but denied that any sums were due and owing to it. On August 4, 1978, Harris moved for summary judgment alleging *inter alia* that payments to Country Service by the developers of Knollwood Planned Development for work performed by it were required by their agreements to be made through the Bank of Commerce and Industry in Chicago and that the limited phase of Country Service's work which affected the Harris property consisted of the excavation of a lake and road designated as Phase 3 of the development project. It further alleged that from time to time during the work payments had been made to Country Service of sums totaling $145,000 for that work and that for each such payment Country Service had executed and delivered a lien waiver to the Bank of Commerce and Industry by which Country Service had released all claims for a mechanics' lien for work performed prior to April 18, 1975, the date of the last

waiver of lien. The several lien waiver forms referred to were attached as exhibits to Harris' motion.

In its motion for summary judgment Harris also acknowledged Country Service had performed some additional work on Phase 3 of the project after April 18 and attached as exhibits invoices and work tickets relating to that work. They described the work performed and totaled $1,184 which Harris tendered in court as full payment and satisfaction of Country Service's claim for lien against its property.

Country Service's response to Harris' motion admitted it had presented lien waivers and received payments, but denied that the waivers were final; it asserted the waivers were only partial and were understood and intended by the parties to waive Country Service's lien rights only to the extent of the sums actually paid to it from time to time. Country Service alleged it retained full lien rights to the balance of the contract sums as set forth on the last payout order in the sum of $117,751.20. Country Service's response also agreed it had performed certain work after April 18, 1975, but denied the amount set forth in Harris' motion was the sum due to it.

Harris subsequently supplemented its motion for summary judgment with the affidavit of Richard P. Larsen, president of the Bank of Commerce and Industry, in which he stated the lien waivers were taken by it and intended to waive all lien rights to their dates and that payments would not have been made otherwise. Country Service thereupon also supplemented its response by the affidavit of Willis Clark, its president, stating the lien waivers in question had been executed by him or at his direction and that it was his intention they should be effective to waive plaintiff's lien rights against Harris' premises only to the extent of the sums received from time to time and to preserve the balance set forth on a statement of account noted on the payout orders accompanying the lien waivers. Clark also stated in his affidavit that it was customary in the building industry in Lake County to use such lien waiver forms to waive lien rights only to the extent of the amount actually received and that there remained an unpaid balance due Country Service of $121,467.70 for work performed by Country Service on Phase 3 of the project. Country Service also submitted affidavits by certain contractors doing business in Lake County, an officer of the Lake County Contractor's Association and a title officer in the Lake County office of Chicago Title & Trust Company, each of which stated that the "lien waiver to date" form under consideration in this case is usually and customarily considered by contractors and subcontractors in Lake County to waive lien rights only to the extent of the money received by them to the date of the lien waiver and that all other lien rights are preserved. Harris responded with an affidavit by Andrew A. Malone, president of the contractor company,

refuting the Willis Clark affidavit and stating the lien waivers were intended and so state that they waived Country Service's lien rights to their respective dates.

The trial court found that by virtue of the lien waivers executed and delivered by Country Service that it was precluded as a matter of law from enforcing a mechanics' lien against Phase 3 of the project for any work performed prior to the dates of the lien waivers and granted Harris' motion for summary judgment.

■■ ■ The purpose of summary judgment proceedings is not to try an issue of fact, but to determine whether one exists. (*Econo Lease, Inc. v. Noffsinger* (1976), 63 Ill. 2d 390, 393, 349 N.E.2d 1, 2.) Summary judgment shall be granted if the pleadings, admissions, depositions and affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law (Ill. Rev. Stat. 1979, ch. 110, par. 57; *Erasmus v. Chicago Housing Authority* (1980), 86 Ill. App. 3d 142, 144, 407 N.E.2d 1031, 1032-33), and if it is thus disclosed that a genuine issue of material facts does exist the motion should be denied. *Dakovitz v. Arrow Road Construction Co.* (1975), 26 Ill. App. 3d 56, 61, 324 N.E.2d 444, 448.

The lien waivers executed and delivered by Country Service from time to time in exchange for payments to it by the Bank of Commerce and Industry were all in essentially the same general form and language. Each document, except for one, was entitled "Waiver of Lien to Date"; and the exception was entitled "Partial Waiver of Lien." They were each dated, directed to whom it may concern and stated that Country Service had been employed by the contractor, Malone, to furnish excavating work to Phase 3 of the Knollwood project. The lien waivers each further stated that in consideration of the respective sums specified in them, Country Services does:

> "hereby waive and release any and all lien or claim or right of lien under the statutes of the State of Illinois, relating to mechanic's liens, on the above described premises and improvements thereon, and on the monies or other considerations due or to become due from the owner on account of labor or services, material, fixtures or apparatus heretofore *furnished to this date* by [Country Service] for the above described premises." (Emphasis added.)

Each waiver also stated at the bottom of the form "NOTE: all waivers must be for the full amount paid."

Included as a part of each document upon which the lien waivers were printed was a contractor's affidavit form which in each case was also executed by a representative of Country Service. It stated that Country Service was a contractor for work on Phase 3 of the Knollwood project and affirmed:

"that all waivers are true, correct and genuine and delivered unconditionally and that there is no claim either legal or equitable to defeat the validity of said waivers * * * that there are no other contracts for said work outstanding, and that there is nothing due or to become due to any person for material, labor or other work of any kind done or to be done upon or in connection with said work * * *."

Also printed on the same document with the lien waiver and contractor's affidavit was a "payout order" directed to The Bank of Commerce and Industry which was signed by the contractor and approved by the owner. It certified that Country Service was entitled to the sums claimed for work done on Phase 3 of the Knollwood project. Each payout order also was signed by a representative of Country Service in a section designated "received payment in full."

The payout orders also contained a section entitled "Statement of Account" in which the amount of the original contract, approved additions and deductions, net contract, previous payments, and this payment and balance were listed. The statement of account on the last payout order of April 18, 1975, listed a balance of $117,751.20.

Country Service contends the trial court erred in determining as a matter of law that the waivers bar its claim for a mechanics' lien for all work performed prior to April 18, 1975, the date of the last "waiver of lien to date." It asserts that it intended by the series of lien waivers to only surrender its lien rights to the extent of the payments made to it and to preserve its right to a lien for work performed before those dates, but not yet billed. Country Service suggests that when the payout orders and lien waiver forms are read together they are ambiguous and extrinsic evidence of the parties' intent and custom in the trade with respect to the documents may be considered to determine the scope of the lien waivers. *Edward Hines Lumber Co. v. Dell Corp.* (1977), 49 Ill. App. 3d 873, 884, 364 N.E.2d 368; *Burgoyne v. Pyle* (1931), 261 Ill. App. 356, 368.

■■ It is well established that, absent ambiguity in the written terms of a contract, the language of the instrument provides the sole criteria of the intention of the parties. (*Althoff Industries, Inc. v. Elgin Medical Center, Inc.* (1981), 95 Ill. App. 3d 517, 520, 420 N.E.2d 800, 803.) Where its terms are plain and unambiguous, the intent of the parties must be ascertained solely from its language. (*Western Illinois Oil Co. v. Thompson* (1962), 26 Ill. 2d 287, 291, 186 N.E.2d 285, 287; *Chicago Investment Corp. v. Dolins* (1981), 93 Ill. App. 3d 971, 974-75, 418 N.E.2d 59, 62; *Maloney v. Maloney* (1980), 88 Ill. App. 3d 146, 148, 410 N.E.2d 416, 417.) Whether an ambiguity exists is a question of law to be initially determined by the court before any extrinsic evidence may be considered. *Pioneer Trust & Savings Bank v. Lucky Stores, Inc.* (1980), 91 Ill. App. 3d 573, 575, 414

N.E.2d 1152, 1154; see also *Susmano v. Associated Internists of Chicago, Ltd.* (1981), 97 Ill. App. 3d 215, 219, 422 N.E.2d 879, 882; *Herbert Shaffer Associates, Inc. v. First National Bank* (1975), 30 Ill. App. 3d 647, 653, 332 N.E.2d 703, 708.

We do not agree that the lien waivers executed by Country Service may realistically be considered ambiguous. Each of them states in clear, express language that they release and waive any mechanics' lien or right to such lien against the subject premises due or to become due from the owner on account of labor, material or services heretofore *furnished to this date* by Country Service. Nor does reference to the separate form designated as a payout order lend weight to Country Service's argument by limiting application of the lien waivers to the payment made when each was submitted. At most, the statement of account on the payout form simply provides a review of the status of the contract between Country Service and the contractor, Malone. It does not suggest that the designated "balance" was for work actually performed under the contract for which Country Service was then entitled to payment nor does it provide by its terms for a reservation of lien rights contrary to the express terms of the lien waivers. The construction urged by Country Service is unacceptable in light of the explicit terms of the lien waiver forms tendered by it for payment. Such construction would also be in conflict with the contractor's affidavit submitted by plaintiff in which Country Service affirmed that the lien waivers were delivered unconditionally and there was nothing due or to become due to any persons for material or labor in connection with the work.

Country Service acknowledges in its brief that the lending agency, the Bank of Commerce and Industry, which accepted the lien waivers and made payment to Country Service, believed that the "balance" noted in the statement of account was the balance to complete the contract and not, as now suggested by Country Service, the balance then due to it. If that were the case it was incumbent upon Country Service to then reserve its lien rights by appropriate language in its waiver of lien. An innocent party has the right to rely upon a signed waiver of lien (*Richard's Lumber & Supply Co. v. National Bank* (1975), 32 Ill. App. 3d 835, 336 N.E.2d 820), and no issue of fraud has been raised in this case. See *Contract Builders Service Corp. v. Eland* (1981), 101 Ill. App. 3d 366, 428 N.E.2d 178.

■■ We conclude that when considered alone, or together with the accompanying contractor's affidavit and payout forms, there is no apparent ambiguity in the terms of the lien waivers which would permit consideration of extrinsic evidence to vary those terms. There is therefore no basis for consideration of the conflicting affidavits submitted by the parties directed to their intent or custom in use of these lien waiver forms.

The trial court correctly determined Harris was entitled to summary judgment as to the claims by Country Service prior to April 18, 1975. Compare *St. Joseph Data Service, Inc. v. Thomas Jefferson Life Insurance Co. of America* (1979), 73 Ill. App. 3d 935, 941, 393 N.E.2d 611, 616-17; *Keep Productions, Inc. v. Arlington Park Towers Hotel Corp.* (1977), 49 Ill. App. 3d 258, 263, 364 N.E.2d 939, 943.

We also find that the trial court was correct in entering summary judgment against Country Service for work performed after April 18, 1975. Harris attached work tickets and invoices as an exhibit to its motion which it asserted related to all work performed by Country Service on Phase 3 after that date. These demonstrated that $1,184 was due to Country Service for that period, and Harris tendered such sum in court with its motion. Country Service's only response was a denial that was the correct sum due. *Fredman v. Clore* (1973), 13 Ill. App. 3d 903, 301 N.E.2d 7, *aff'd in part & rev'd in part on other grounds* (1974), 59 Ill. 2d 20, 319 N.E.2d 18.

Accordingly, the judgment of the circuit court of Lake County will be affirmed.

Affirmed.

HOPF and LINDBERG, JJ., concur.