FAERBER ELECTRICAL COMPANY, INC., Plaintiff-Appellant, *v.* INTER-NATIONAL TELEPHONE AND TELEGRAPH CORPORATION, d/b/a ITT World Communications, Inc., *et al.*, Defendants-Appellees.

First District (1st Division)   No. 83—1291

Opinion filed April 23, 1984.

William D. Lyman, of Oak Brook, for appellant.

Reuben & Proctor, of Chicago (Edward G. Proctor and Celia Y. David, of counsel), for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Faerber Electric Company, Inc., appeals from the dismissal of count I of its three-count complaint pursuant to section 2—619(a)(9) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—619(a)(9)). Count I sought to foreclose on a mechanics' lien allegedly arising out of an oral contract between an agent of the lessee, International Telephone and Telegraph Corporation (ITT), and plaintiff, the subcontractor of a general contractor retained by the lessee to renovate a portion of the leased property. On appeal, plaintiff raises the issue: whether the subcontractor's waiver of all mechanics' liens rights in his subcontract also applies to an alleged new oral contract between the subcontractor and the lessee for whom the work was performed when the lessee has allegedly taken over practical charge of the work from the contractor, and the lessee agreed to pay the subcontractor for additional work caused by changed work condi-

tions and erroneous site plans.

Plaintiff, a Delaware Corporation qualified to do business in Illinois, brought a three-count complaint against various defendants as a result of certain work it performed in premises leased by ITT in an office building at 25 East Washington Street in Chicago. Count I sought to enforce plaintiff's mechanics' lien. Count II alleged a breach of contract action against ITT and count III alleged a negligence action against the architectural firm that drew the site plans. Subsequent to this appeal, plaintiff added another count alleging, in the alternative to counts I and II, a breach of contract action against the contractor.

In its complaint plaintiff alleged that ITT entered into a contract with the Interior Alterations, Inc., whereby Interior Alterations would serve as general contractor for the repair and remodeling of premises leased by ITT in the office building known as the "Field Annex Building." These tenant improvements were to be constructed in accordance with pre-existing plans and specifications which ITT prepared for the project. The contract provided that the general contractor waived any right to record a mechanics' lien and required that the general contractor obtain similar waivers from its subcontractors.

The general contractor awarded plaintiff the subcontract for electrical work to be performed in accordance with the plans and specifications. Pursuant to the subcontract, the contractor issued a series of written purchase orders to plaintiff between May 1, 1980, and August 25, 1980. Plaintiff accepted each of these purchase orders. The purchase orders stated that "in consideration of future work to be performed for contractor, the subcontractor agrees that the terms and conditions shall be binding with respect to all future work performed for the contractor (whether covered by specific contracts, purchase orders, or otherwise)." One of the terms of the purchase order was that "No mechanic's lien shall be filed against the premises for work done or materials furnished by the subcontractor." Plaintiff alleged that it performed the work required of it under the terms of its contract with the contractor, and also performed extra work ordered by the contractor and has received full payment for that work.

Plaintiff alleged, however, that the problems arose when it became apparent that the plans furnished to plaintiff were inaccurate and the lessee substantially changed the sequence and the conditions in which the work was to be performed. Specifically, plaintiff claimed that its bid to perform the electrical work was based on the representation that plaintiff would install electrical computer cables, conduits and other electrical equipment under a certain raised floor prior to

the installation of computer components on the raised floor. Nevertheless, ITT installed the computer equipment before plaintiff had the opportunity to perform its work. Also, computer technicians on the job site materially interfered with plaintiff's ability to perform its contract. Plaintiff further alleged that ITT's plans designated a particular vertical shaft as the location of certain electrical raisers and junctions boxes. That specific shaft was obstructed, and ITT failed to obtain permission from the premises owner to use the next best alternative vertical shaft. Instead, ITT directed plaintiff to use another shaft which resulted in increased labor and material costs. The extra work caused by ITT's actions cost plaintiff $129,755 or 81% of the original contract price, including extras approved by the general contractor.

Plaintiff alleged that during its performance under the contract, ITT, through its agent Walt Roden, began to take practical charge of the project away from the general contractor by participating in discussions of how the work was to be done, by causing dramatic changes in the plans and by supervising the performance of the work. In July 1980 plaintiff complained to Roden that under the circumstances it could not perform its work at the contract price. Plaintiff alleged that Roden then authorized and directed plaintiff to proceed with the work required by the contract and assured plaintiff that ITT would pay for the additional costs. At the completion of its electrical work, plaintiff billed ITT for the extra work caused by the inaccurate plans, the changed conditions and the work which had to be performed out of its proper sequence. ITT refused to consider plaintiff's claim. Consequently, plaintiff filed a mechanics' lien claim as an original contractor on the basis of the new and independent contract between plaintiff and ITT.

ITT filed a motion to dismiss count I of plaintiff's complaint based upon the "no lien" provisions contained in the purchase orders, and "no lien" provisions in the contract between ITT and the general contractor. The trial court granted ITT's motion and dismissed count I of plaintiff's complaint. The court found that the "no lien" provisions of plaintiff's contract prohibit the filing of a mechanics' lien foreclosure action. The court held that plaintiff's allegations that ITT took practical charge of the work places ITT in the position of a "Successor 'acting general contractor' " so that all work ordered by ITT was to be performed under the same terms and conditions as the original contract. The court also held that the dismissal of the lien does not extinguish any other remedy available to plaintiff to recover for work performed at the request of ITT.

On appeal, plaintiff argues that the extra work for which it seeks

compensation in this suit was not performed pursuant to the subcontract. Rather, it was performed pursuant to a new and independent contract between plaintiff and ITT. Plaintiff asserts that the new contract did not contain any waiver of lien rights and places plaintiff in the position of a contractor entitling plaintiff to perfect its lien under the Mechanics' Liens Act (Ill. Rev. Stat. 1981, ch. 82, pars. 1, 7). Plaintiff further contends that it is not bound by the "no lien" provisions in the contract between ITT and the general contract because under section 21 of the statute a subcontractor is not bound by such a provision when the subcontractor had no actual notice of its existence. Ill. Rev. Stat. 1981, ch. 82, par. 21.

ITT contends that the lien waiver contained in the series of purchase order agreements applies to the alleged contract between plaintiff and ITT under the authority of *William Aupperle & Sons, Inc. v. American National Bank & Trust Co.* (1975), 28 Ill. App. 3d 573, 329 N.E.2d 458. ITT also argues that since the alleged conversation between Roden and plaintiff gave no indication of the terms of the contract created thereby, it is reasonable to find, in light of the transactions between the parties and plaintiff's awareness that ITT was a mere lessee of the premises, that a lien waiver term was implied in the new contract. ITT further contends that the alleged oral promise to pay for the additional work did not create a new contract but merely expressed an existing provision in the subcontract which provided that plaintiff would receive reasonable compensation for extra work necessitated by additions or alterations in the original specifications. Plaintiff argues, however, that the issue of whether or not the extra work was part of the original contract is a factual issue properly left to the trier of fact.

A motion to dismiss based upon an affirmative defense under section 2—619(a)(9) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—619(a)(9)) and its predecessor, section 48(l)(i) of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 48(l)(i)), admits as true all well-pleaded facts together with reasonable inferences which may be drawn from those facts. (*Brooks v. Village of Wilmette* (1979), 72 Ill. App. 3d 753, 391 N.E.2d 133.) For the purposes of this motion, we must accept as true plaintiff's allegations that the extra work was performed under such changed conditions and increased cost that the statement of ITT's agent created a new contract.

In *Aupperle,* a subcontractor brought an action to foreclose a mechanics' lien for labor and materials due under written agreements with the general contractor and a subsequent oral agreement with the owner for additional work. Both defendants raised the affirmative de-

fense of the lien waivers contained in the agreements with the general contractor. The court held that the lien waivers in the written contracts between the general contractor and the subcontractor were a complete defense to the subcontractor's right of lien in the oral contract between the subcontractor and the owner to the extent that the lien arises out of contracts in existence at the time the final lien waiver was given. Since the oral agreement for additional work was made before the final lien waiver was signed, the court found that the waiver was a complete defense to the subcontractor's lien. The court did allow plaintiff to perfect its lien for work performed pursuant to a contract between the subcontractor and the owner made after the final lien waiver was signed.

Plaintiff argues that *Aupperle* does not apply to the case at bar because the terms to the lien waiver in the present case are more limited than the terms of the waiver in *Aupperle*. Plaintiff argues, in the alternative, that the contract with ITT was not in existence at the time the last lien waiver was signed, despite the fact that the conversation giving rise to the oral contract took place before the last purchase order agreement was signed, because the contract with ITT was a unilateral contract which became binding only after performance by plaintiff. (See *Redd v. Woodford County Swine Breeders, Inc.* (1977), 54 Ill. App. 3d 562, 370 N.E.2d 152.) Plaintiff also asserts that the issue of the intended effect of the lien waiver is a question of fact for the jury and should not have been decided on a motion to dismiss.

It has been held that in cases of ambiguity doubt should be resolved against the waiver, "since it should be presumed *** that one has not disabled himself from the use of so valuable a privilege as enforcement of his mechanics' lien." (*William Aupperle & Sons, Inc. v. American National Bank & Trust Co.* (1975), 28 Ill. App. 3d 573, 577, 329 N.E.2d 458, 461.) We find, however, that the lien waivers in the purchase order agreements signed by plaintiff are clear and unambiguous. (See *Country Service & Supply Co. v. Harris Trust & Savings Bank* (1981), 103 Ill. App. 3d 161, 430 N.E.2d 631.) Plaintiff clearly agreed that in consideration of work requested by the contractor, "No mechanic's lien would be filed against the premises ***." The terms of this waiver are no less broad than the lien waiver at issue in *Aupperle*. Absent ambiguity in the written terms of a contract, the language of the instrument provides the sole criteria of the intention of the parties. (*Country Service & Supply Co. v. Harris Trust & Savings Bank* (1981), 103 Ill. App. 3d 161, 430 N.E.2d 631; *Althoff Industries, Inc. v. Elgin Medical Center, Inc.* (1981), 95 Ill. App. 3d 517, 520, 420 N.E.2d 800, 803.) The court correctly concluded that

under the unambiguous terms of the purchase order agreements the parties intended that no liens would be filed against the premises.

Courts have repeatedly held that a general or full waiver given on account of labor and materials furnished or to be furnished prevents enforcement of a lien for an unpaid balance. (*William Aupperle & Sons, Inc. v. American National Bank & Trust Co.* (1975), 28 Ill. App. 3d 573, 329 N.E.2d 458; *Hyde Park Investment Co. v. Hyde Park State Bank* (1930), 257 Ill. App. 539; *G. Chicoine Contractors, Inc. v. John Marshall Building Corp.* (1966), 77 Ill. App. 2d 437, 222 N.E.2d 712.) Since the lien against ITT arises out of a contract in existence at the date the waivers in the purchase orders were given, the lien waivers are a complete defense to plaintiff's right of lien. *William Aupperle & Sons, Inc. v. American National Bank & Trust Co.* (1975), 28 Ill. App. 3d 573, 329 N.E.2d 548.

Moreover, we are not persuaded that the contract between plaintiff and ITT was not in existence at the time that plaintiff signed the August 25, 1980, purchase order agreement. Plaintiff's complaint alleged that its conversation with ITT's agent took place in July 1980 and that plaintiff immediately resumed working under the changed conditions caused by ITT. Under these circumstances, the contract between ITT and plaintiff is subject to the lien waiver in the purchase order agreement. The trial court did not err in dismissing plaintiff's mechanics' lien foreclosure action.

We note that the only issue before this court and the trial court is the motion to dismiss the lien foreclosure action in count I of plaintiff's complaint. Nothing in this opinion should be construed to affect plaintiff's attempt to recover under the remaining counts of its complaint. Accordingly, we remand this case for further proceedings on the remaining counts of plaintiff's complaint.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed and remanded for further proceedings.

BUCKLEY, P.J., and GOLDBERG, J., concur.