S.J. GROVES & SONS COMPANY, A Minnesota corporation, Plaintiff,

v.

MIDWEST STEEL ERECTION COMPANY INC., an Illinois corporation, and Reliance Insurance Company, a New York corporation, Defendants.

No. 86 C 5982.

United States District Court, N.D. Illinois, E.D.

Dec. 19, 1986.

John E. Burke, Claudia J. Lovelette, Burke, Bosselman & Weaver, Chicago, Ill., for plaintiff.

Edward M. White, Michael J. Murray, Carey, Fiter, White & Boland, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

Plaintiff, S.J. Groves & Sons Company ("Groves"), filed this diversity action against Midwest Steel Erection Company, Inc. ("Midwest") and Reliance Insurance Company ("Reliance"). Groves entered into a contract with the Illinois Department of Transportation ("IDOT") for the construction of road and bridge improvements in Lasalle, Illinois ("the Lasalle Bridge Project"). Groves entered into a subcontract with Midwest for work on that project. Groves alleges that Midwest breached the subcontract and that Reliance breached its obligations under a performance bond obtained by Midwest for the benefit of Groves. Midwest filed a counterclaim, alleging breach of contract by Groves and establishing a lien, pursuant to Ill.Rev.Stat. ch. 82, ¶ 23, on funds due Groves from IDOT.

Presently before the Court is Grove's motion for partial summary judgment on Count I of the counterclaim, which constitutes the lien action. For the reasons noted below, that motion is granted and Count I of the counterclaim is dismissed with prejudice.

## I

Grove's motion is premised upon paragraph 29 of the contract between Groves and Midwest, which states:

The Subcontractor agrees that it shall not at any time file any lien, or stop notice to a government agency, or notice of claim to a lien of any kind or nature whatsoever, nor permit the same to be filed for work performed or materials furnished pursuant to the terms of this Agreement or any modification hereof, or for any extra work performed or materials furnished or for any other reason or upon any ground whatsoever; and, Subcontractor does hereby waive and relinquish the right to any and all liens, stop notices, or claim of lines [sic] as may be permitted or provided for by any provisions of law.

Midwest argues, on several grounds, that this waiver provision should not prevent Midwest from pursuing its lien action. First, Midwest contends that, pursuant to public policy, the waiver provision is unenforceable under Illinois law. Midwest's sole authority for this proposition is *Central Lime & Cement Company v. Leyden-Ortseifen Company*, 245 Ill.App. 48 (1st Dist.1927).

In *Central Lime*, the plaintiff, Central Lime, was a subcontractor of the defendant, Leyden-Ortseifen. The defendant, in turn, was the general contractor on a project for the Sanitary District of Chicago. At trial, the court found that Leyden-Ortseifen and 12 subcontractors, including Central Lime, were owed various amounts by the Sanitary District. On appeal, the Sanitary District argued that a lien waiver found in the contract between the general contractor, Leyden-Ortseifen, and the Sanitary District precluded the subcontractors from attaching any liens. The Sanitary District cited Ill.Rev.Stat. ch. 82, ¶ 21, which, both at the time of the *Central Lime* decision and at present, allows a lien waiver executed by a general contractor to bind subcontractors if certain conditions are met.

The appellate court found paragraph 21 was not applicable, noting that the section applied to private construction contracts. Instead, it found the case to be brought under Ill.Rev.Stat. ch. 82, ¶ 23, the lien provision for public construction contracts also at issue in the case at bar. In its analysis of the effect of the lien waiver, the *Central Lime* court began by noting that the waiver was found in the contract between the Sanitary District and the general contractor. The Court then noted that, unlike paragraph 21, paragraph 23 provides liens only for subcontractors, not general contractors. The Court also noted that, again unlike paragraph 21, paragraph 23 provides for a lien only on funds due from the governmental entity to the general contractor—no party, whether a general contractor or a subcontractor, may have a lien on the public improvement itself. Thus, there is no need for paragraph 23 to provide a lien in favor of a general contractor, for "it would be absurd to provide by law for a lien in favor of the contractor upon moneys to which he becomes entitled under his contract." *Id.* at 53.

Based on this analysis, the *Central Lime* court found that the lien waiver executed by Leyden-Ortseifen was "in fact ineffectual." *Id.* The basis for this conclusion was that, as the *Central Lime* court noted, Leyden-Ortseifen had no lien to begin with. It could not levy a lien against the public improvement and had no rights under paragraph 23 which it could waive because that section runs only in favor of subcontractors whose rights against the public beneficiary, unlike those of general contractors such as Leyden-Ortseifen, were not already protected by contract. Thus, the *Central Lime* court's implicit holding was that the lien waiver was a nullity that did not bind Leyden-Ortseifen or the subcontractors. This conclusion would also draw support from the fact that, as noted previously, although paragraph 21 contains language which permits subcontractors to be bound by waivers executed by general contractors, paragraph 23 does not.

■ Thus, *Central Lime* provides no guidance concerning the ability of a party whose interests paragraph 23 is designed to protect—a subcontractor—to waive that

protection. In the absence of definitive Illinois case law construing waivers of liens under paragraph 23, the Court will look to Illinois case law construing waivers by subcontractors of other Mechanics' Lien Act provisions. Illinois courts have repeatedly upheld waivers of mechanics' liens by subcontractors. *See, e.g., Faerber Electrical Company v. International Telephone and Telegraph Corp.,* 123 Ill.App.3d 704, 79 Ill.Dec. 266, 269–70, 463 N.E.2d 820, 823–24 (1st Dist.1984); *Country Service & Supply Company v. Harris Trust & Savings Bank,* 103 Ill.App.3d 161, 58 Ill.Dec. 599, 602–03, 430 N.E.2d 631, 634–35 (2d Dist. 1981), *William Aupperle & Sons, Inc. v. American National Bank & Trust Company of Chicago,* 28 Ill.App.3d 573, 329 N.E.2d 458, 461–62 (3rd Dist.1975). Midwest has failed to convince this Court that public policy requires a different result when the underlying project happens to be a public project. The mechanics' lien provisions concerning subcontractors, whether for private or public projects, are designed to ensure that subcontractors will have some recourse against the ultimate beneficiary of the subcontractors' labors—the project owner—if the general contractor fails to meet its obligations to the subcontractor. The fact that the Illinois legislature's understandable refusal to allow liens directly against public property necessitated paragraph 23's specific procedures does not differentiate the protective intent behind paragraph 23 from the intent behind the provisions protecting subcontractors in private projects. Therefore, given that the Illinois courts have made it clear that subcontractors may waive statutory lien rights on private projects, the Court holds that Midwest could waive its lien under paragraph 23 as well.[1]

■ Midwest's second argument is that the waiver provision is ambiguous and does not encompass Midwest's lien rights under paragraph 23. The Court disagrees. The language of the waiver is clear and sweeping. Given an unambiguous waiver, Illi-

nois courts have not hesitated to dismiss lien actions brought by subcontractors. *See, e.g., Faerber,* 79 Ill.Dec. at 269–70, 463 N.E.2d at 823–24. Therefore, the Court rejects Midwest's argument and finds that Midwest's rights pursuant to paragraph 23 are encompassed within the terms of the waiver.

■ Midwest also argues that Groves' alleged breach of the contract constitutes a failure of consideration which prevents Groves from asserting the waiver provision. This argument also fails. The contract between Groves and Midwest involved promises by both sides—Midwest to perform the stated work and Groves to pay an amount certain for that work—"and mutual promises have long been held sufficient consideration to support a contract." *Wilson v. Continental Body Corp.,* 93 Ill. App.3d 966, 418 N.E.2d 56, 59 (1st Dist. 1981). Grove's alleged failure to fulfill its part of the bargain does not render this consideration deficient. "Where the consideration in a contract is a party's promise to perform in the future, the consideration does not fail because of non-performance, since the promise, and not the performance, is the real consideration." *Id.*

The operation of these precepts in lien actions is illustrated by *Faerber, supra.* The complaint in that action stated three counts: for enforcement of a mechanics' lien, for breach of contract and for negligence. The trial court dismissed the mechanics' lien pursuant to a waiver provision; the appellate court affirmed that dismissal and remanded the action to the trial court for adjudication of the contract and negligence claims. Neither the trial nor appellate court in any way intimated that the unresolved claims of breach of the construction contract in any way affected the legitimacy of the waiver provisions or prevented summary adjudication of the lien claim.

---

1. Midwest also argues that the mandatory language of paragraph 23 supports its position that the lien rights created by that section cannot be waived. Although it is true that paragraph 23 creates duties upon state officials that are mandatory, this in itself sheds no light upon whether the right created by the section may be waived by the intended beneficiaries.

Finally, Midwest asserts that Groves' failure to assert waiver as a specifically enumerated affirmative defense in Groves' reply to Count I of the counterclaim violates Fed.R.Civ.P. 8(c) and precludes this Court from considering this defense. Although Groves should have noted its waiver defense in its reply, the Court finds that this failure does not preclude the Court from considering this defense through a motion for summary judgment. The federal courts have allowed defendants to raise affirmative defenses through pretrial motions. *See,* C. Wright & A. Miller, 5 *Federal Practice & Procedure,* § 1278 at p. 345 (1969). Given that the instant motion was filed on the same day as the reply, thus according Midwest the same timely notice of the defense as it would have received had the defense been specifically noted in the reply, the Court finds that it would be inequitable to prevent assertion of the defense. Moreover, as Groves notes, the contract which is the source of the waiver is raised by Midwest itself within the body of the counterclaim. Thus, Midwest cannot claim surprise concerning the basis for this motion. However, to correct the formal record, the Court will grant Groves' request, pursuant to Fed.R. Civ.P. 15, to amend its reply, *nunc pro tunc* to October 16, 1986, to include formal mention of the waiver defense. *See generally, A.D.E., Inc. v. Louis Joliet Bank & Trust Company,* 742 F.2d 395, 397 (7th Cir.1984); C. Wright & A. Miller, 5 *Federal Practice & Procedure,* § 1278 at p. 345 (1969). The Court orders Groves to file its amended reply within 14 days of this Order.

## II

Groves has also requested its attorneys' fees and costs associated with the instant motion. Groves predicates its request upon the first paragraph of paragraph 14 of the Groves—Midwest contract, which states:

> Subcontractor agrees to indemnify and hold harmless Contractor from and against any and all losses, damages, costs, claims, lawsuits, judgments, settlements and expenses including without limitation attorneys' fees and court costs due to any breach of this Subcontract Agreement.

The Court finds that it is prudent to await final resolution of all of the parties' claims concerning breach of the contract before determining the proper allocation of fees and costs under the contract. Therefore, the Court will deny Groves' motion for fees and costs, without prejudice, at this time. Groves may reassert its claim for the fees and costs associated with this motion at the conclusion of this action.

## III

For the reasons noted above, Grove's motion for partial summary judgment upon Count I of Midwest's counterclaim is granted. Count I of the counterclaim is dismissed with prejudice. Groves' motion for attorneys' fees and costs is denied without prejudice to reassertion at the conclusion of this action. Groves is ordered to file an amended reply in conformance with this opinion within 14 days.