Miller Bros. Industrial Sheet Metal Corporation, an Illinois Corporation, Plaintiff-Appellant, v. La Salle National Bank, etc., et al., Defendants-Appellees, Thomas J. Duffey, et al., Appointed and Presently Acting as Trustees of The Central States, Southeast and Southwest Areas Pension Fund, Holders of Notes Secured by Documents Nos. 1046444 and 1075681, Counterclaimant-Appellees in Mortgage Foreclosure, Armco Steel Corporation, et al., Pittsburgh Plate Glass Company, et al., and Unknown Owners, Cross and Defendant-Countercomplainant-Appellees in Mechanic's Lien Foreclosure.

Gen. Nos. 69–20, 69–24. (Consolidated.)

Second District.

December 31, 1969.

Rehearing denied March 16, 1970.

Charles A. Marshall, Jr., of Chicago, for appellant.

Teitelbaum, Wolfberg and Guild, of Chicago, and A. Edmund Peterson and Leonard Higley, of Chicago, Ronald J. Guild, Leonard Higley, of counsel, for Trustees of the Central States Southeast and Southwest Areas Pension Fund, appellees.

Robert M. Woodward, Robert M. Grossmann, Albert E. Arnstein, Arnstein & Levin, Marvin Green, Hoffman and Davis, Seyfarth, Shaw, Fairweather & Geraldson, Craven, Stege & Markels, Ashcraft, Olson, Beach, Kimball, Alexander & Edmonds, O'Brien, Heywood & Evans, Wexler & Wexler, Samuel H. Cohon, and Robert Irmiger, all of Chi-

cago, Murphy & Griffin, Ruddy, Myler & Bartsch, Charles H. Atwell, Dreyer, Foote & Streit, Reid, Ochsenschlager, Murphy & Hupp, Alschuler, Putnam, McWethy, Weiss & Weiler, O'Brien, Burnell, Puckett & Barnett, and Colonel Charles H. Edwards, Edwards, Brunnemeyer & Hughes, all of Aurora, Smith & McCracken, of Geneva, Ronald Burstein and Edward A. Glaeser, of Dundee, Kirkland, Brady, McQueen, Martin & Callahan, of Elgin, Samuel Andreano, of Joliet, and Redman, Shearer & O'Brien, of St. Charles, for other appellees.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

Two separate appeals have been prosecuted from a decree of foreclosure and sale entered by the Circuit Court of Kane County and have been consolidated for purpose of consideration by this court. Although the suit involved a large number of parties and the trial record is voluminous, the issues before this court are relatively few and the facts need only brief exposition.

On May 20, 1965, La Salle National Bank as Trustee, the record owner of the property commonly known as the Aurora Downs Race Track, executed a trust deed to Chicago Title and Trust Company as trustee to secure a note in the principal amount of $850,000. The note was held by the Trustees of the Central States, Southeast and Southwest Areas Pension Fund (hereinafter called "Pension Fund") as evidence of their loan in that amount to finance the purchase of the property. On August 20, 1966, La Salle executed a second trust deed to Chicago Title to secure a note in the amount of $750,000 for funds advanced by the Pension Trust to partially finance a modernization of the track. The proceeds from both loans were disbursed through escrows established at Chicago Title.

On March 15, 1967, Miller Bros. Industrial Sheet Metal Co. (hereinafter called "Miller Bros.") filed a complaint to foreclose a mechanic's lien claimed on the property and alleged that the lien was superior to the

interest claimed by Chicago Title and made them party defendant. On May 3, 1967, the complaint was amended to name numerous other lien claimants as parties including Pittsburgh Plate Glass Company (hereinafter called "Pittsburgh") and the Pension Fund. Pittsburgh and the other claimants answered the amended complaint and filed counterclaims to foreclose their own alleged mechanics' liens against the property for labor and material expended in the modernization of the track.

On June 16, 1967, Chicago Title as trustee under the two trust deeds and the Pension Fund answered the amended complaint and various counterclaims and denied that their liens were subject or subordinate and, by countercomplaint, the Pension Fund sought foreclosure of the trust deeds for default in the repayment of the loans made by them. Thereafter, the record is filled with petitions of other claimants to intervene, cross-claims, answers, motions and other pleadings filed by the seventeen different attorneys that appeared in the cause.

On October 25, 1968, the trial court entered a decree of foreclosure that found that the Pension Fund had a first lien against the property in the amount of $1,013,-840.16 for principal, interest, costs and attorneys fees by virtue of the trust deed recorded in 1965 and a lien in the amount of $787,070.56 by virtue of the trust deed recorded August 20, 1966, that was junior to the lien of the first trust deed but senior to the rights of all other parties. The decree further found that certain mechanic's lien claimants had perfected their liens and reserved the question of "enhancement" to the property pursuant to section 16 of the Mechanics' Lien Act (Ill Rev Stats 1967, c 82, § 16) for further determination. A further provision found that certain other claimants, including Miller Bros. and Pittsburgh, had proven their claims only against the realty and the owner and that their liens were junior both to the Pension Fund

and to the perfected liens of the other claimants. Miller Bros. and Pittsburgh both appealed from that decree on the grounds that they were entitled to the priority of perfected lien claimants and for other reasons.

On June 16, 1966, Pittsburgh entered into a contract with G.T.O. Steel Erectors, Inc., the general remodeling contractor, to furnish the labor and material for the installation of a plate glass curtain wall at the track for an agreed consideration of $58,500. On July 1, 1966, Pittsburgh entered into an identical agreement with the Haber Corporation to do the same work for the same consideration as an additional security for payment. The second contract was personally guaranteed by the beneficiaries under the land trust that held legal title to the property. The contracts provided that payments would be made as the work progressed on the basis that 90% of the value of all materials delivered and work completed during a month would be paid by the 10th day of the following month and the balance paid in full upon completion of the contract.

As the work progressed, Pittsburgh submitted applications for payment in August, September and October, 1966, for 90% of the work completed during the prior months. The application dated October 11, 1966, showed that $40,000 of the work had been completed and that, after the 10% retention, $36,000 was then due. On October 20, Pittsburgh was paid the $36,000 from the construction loan escrow after it had submitted a partial waiver of lien for work done to that date.

On November 1, a further application was submitted that stated that all of the work had been completed including $161 in "change orders" and that $22,661 was due as of that date. The application was marked as "Final" in two places and no part of the total amount due was to be retained. Identical statements were submitted in the months following and were never paid.

27

On March 6, 1967, Pittsburgh served the record owner, La Salle, with notice that $22,661 was due them and stated that the work had been completed December 6, 1966. On March 8, 1967, a claim for lien in that amount was filed with the office of the recorder of Kane County that also stated that the work was completed December 6. Pittsburgh's counterclaim and amended counterclaim to foreclose their lien also alleged the work had been completed December 6.

On appeal, Pittsburgh maintains that it was uncontested that they had completed the work provided in the contracts with G.T.O. and Haber; that they were still owed the balance of $22,661; and, that they had perfected their lien rights as provided in the Mechanics' Lien Act and were entitled to the priority afforded to the other perfected claims in the decree entered by the trial court. They further contend that the trial court erroneously provided that interest on the amount due would be computed from the date of the decree rather than the date the full amount was due.

Although the decree does not contain any factual findings to support the priorities of claims, it is apparent that the court concluded that Pittsburgh had failed to record a notice of lien within four months after completion of the work. Section 7 of the Act (Ill Rev Stats 1967, c 82, § 7) provides that no contractor "shall be allowed to enforce such lien against or to the prejudice of any other creditor or encumbrance . . ." unless, within four months after completion of the work or within four months of the completion of "extra or additional" work the contractor has brought suit to enforce his lien or filed a verified claim for lien in the office of the recorder of deeds.

The only testimony offered in regard to the Pittsburgh claim was that of Normal W. Allen, the branch manager. Allen identified numerous invoices that indicated the dates work was done at the track. From the in-

voices, he testified that men were dispatched to the job on January 11, 1967, and the work "completed" one or two days later. The invoices did not indicate that any work was done between October 31 and January 11.

On cross-examination, Allen testified that three glazers were sent to the job on January 11 to reset some gasket material on certain lights that had worked loose. He stated that the work had been previously "in general completed" and that the resetting was ". . . something that may have been omitted or corrective work. . . ." There was no additional billing to Haber or G.T.O. for the work in January and the invoice was charged to the "contract," or considered part of the agreed contract price.

Pittsburgh here contends that the work done on January 11 was an integral part of the original contract and that therefore its notice was filed within the time limit of the statute. Both parties have cited our recent decision rendered in De Anguera v. Arreguin, 92 Ill App2d 381, 234 NE2d 808. In that case, the lien claimant furnished windows and doors in a new home in March, 1965. In November, 1965, he returned to the home and installed clamps and handles that were necessary to make the windows operable. We held that the issue was whether the work done was "trivial and inconsequential in character or was essential to the completion of the contract" and concluded that the finding of the trial court that the work of November, 1965, was not inconsequential was not against the manifest weight of the evidence.

We likewise conclude here that the finding of the trial court that Pittsburgh had completed the contract within the meaning of section 7 prior to November 1, 1966, was not against the manifest weight of the evidence. The applications for payment prepared and submitted by Pittsburgh clearly indicate that they considered the work completed prior to that date and that they were entitled to the entire balance due on the

contract. Although Allen's testimony that three glazers returned to the track on January 11 was unrefuted, it is evident that their activity was in the nature of maintenance of a completed job rather than the completion of the contract itself. A "re-setting" of the loose gaskets obviously implies that there had been an earlier "setting" and that the subsequent work was to correct some malfunction. It would be inconsistent with the rules of strict construction that must be used in relation to the Mechanics' Lien Act to find that the time to file a lien could be extended by maintenance or correction of completed work. Accordingly, we find that the position of the Pittsburgh claim among the priorities established by the trial court was not in error. Since we conclude that Pittsburgh had no enforceable lien against the Pension Fund, the issue as to when interest should commence is not material to this appeal.

The claim of Miller Bros. is based on a contract dated June 20, 1966, with the Haber Corporation (and also guaranteed by the beneficiaries of the La Salle land trust) to repair and renovate the heating and ventilation systems at the racetrack and furnish the other sheet metal work. Miller Bros. was to be paid on the basis of labor expended and materials furnished with an additional 10% of the costs of the materials as profit and overhead.

On March 15, 1967, as we have discussed above, Miller Bros. filed a complaint to foreclose its alleged mechanic's lien against the property and for judgments against the Haber Corporation on the contract and against the guarantors. The complaint alleged that the work had been completed December 22, 1966, and that they had been paid $155,738.20 with an unpaid balance due of $163,849.03. The Haber Corporation and the guarantors in their answer alleged that Miller Bros. had

30

already been overpaid on the contract and brought counterclaim for $350,000 for allegedly defective work furnished by them. The complaint against Haber and the guarantors and the counterclaims were subsequently dismissed on the stipulation of the parties.

Miller Bros. maintains that since their notice was properly recorded and suit instituted within four months of the completion of their work, that their lien was effective as of the date of their contract (June 20) pursuant to section 1 of the Mechanics' Lien Act (Ill Rev Stats 1967, c 82, § 1) and had absolute priority over the trust deed of August 20 and that they were entitled to prove enhancement as to the earlier encumbrance. The trial court found that Miller Bros. had perfected their lien only against the owner and the property and in the amount of $122,230.29 since a portion of their total claim was owed other subcontractors that had established prior liens.

On January 18, 1967, Miller Bros. executed and delivered to the Haber Corporation a document entitled "Partial Waiver of Lien" that stated that in consideration of the payment of $56,851.23 Miller Bros. ". . . hereby waive and release any and all lien or claim or right of lien under the Statutes of the State of Illinois . . . on account of labor or services, material, fixtures or apparatus heretofore furnished to this date. . . ." Philip C. Miller, the president of Miller Bros., testified that the $56,851.23 had been paid in three installments and that on January 18 they received only the last installment of $10,611.03. Affidavits were submitted by Miller and by Thomas Cooper, the president of Haber, to the effect that both parties understood that there was a substantial balance owed Miller Bros. on January 18 and that the waiver was partial only and was not intended, despite its language, as a complete waiver for all work done to that date.

On appeal, Miller Bros. contends that the trial court should have permitted Miller and Cooper, who were present in open court, to testify as to their intentions at the time the waiver was executed and delivered and that the court should have reformed the waiver in accordance with the intention of the parties since the instrument was itself ambiguous and contradictory.

■ ■ It is of course axiomatic that a written instrument is presumed to show the intention of the parties and will not be reformed unless the evidence of mutual mistake or other grounds for reformation is strong and convincing. Michigan Mut. Liability Co. v. Type & Press Co. of Illinois, 62 Ill App2d 364, 210 NE2d 787; Almer Coe & Co., Inc. v. American Nat. Bank & Trust Co. of Chicago, 44 Ill App2d 104, 110, 194 NE2d 14; Hardy v. Greathouse, 406 Ill 365, 94 NE2d 134. It has been said that the evidence that the written agreement does not express the intention of the parties must be ". . . such as will strike all minds alike as being unquestionable and free from reasonable doubt." Christ v. Rake, 287 Ill 619, 122 NE 854.

■ We do not think the evidence submitted met this strenuous test. The affidavit of Thomas Cooper was contradicted by his prior averment on behalf of Haber Corporation that Miller Bros. had been in fact overpaid. The waiver itself expressly stated in the body that any and all liens or claims of liens were waived for work done to the date it was signed. As further argument that the parties intended only a partial waiver, Miller Bros. cites the patent absurdity of delivering a complete waiver when over $160,000 was still due. However, at the time the waiver was delivered they had the written promises of both the Haber Corporation and the owners of the beneficial interests in the land trust to make complete payment.

Under the circumstances, we do not feel that the trial court erred in its refusal to reform the waiver of

lien dated January 18, 1967. Since Miller Bros. did no work after that date, we are of the opinion that the decree of the trial court was correct in all respects and should be affirmed.

Affirmed.

DAVIS and SEIDENFELD, JJ., concur.