JOHN DAILY, Plaintiff-Appellee, v. MIDAMERICA BANK AND TRUST COMPANY OF CARBONDALE, Defendant-Appellant (Jim Peak *et al.*, Defendants).

Fifth District   No. 5—84—0278

Opinion filed January 11, 1985.

Gilbert, Kimmel, Huffman & Prosser, Ltd., of Carbondale, for appellant.

James R. Moore, of Carterville, for appellee.

JUSTICE KARNS delivered the opinion of the court:

John Daily, a general contractor, brought this action in the circuit court of Jackson County seeking to foreclose a mechanic's lien for carpentry work performed at a site known as "Office in the Park" in Carbondale. Named in the suit were Jim Peak and Ron Halstead, d/b/a Halstead-Peak Development Company, a/k/a Halstead-Peak Development, Inc. (apparently a partnership and not a corporation), beneficial owners of the land trust upon which real estate the mechanic's lien is claimed, MidAmerica Bank & Trust Company of Edgemont, trustee of the land trust and mortgagor for the improvements project, and MidAmerica Bank & Trust Company of Carbondale, mortgagee and sole appellant herein.

The trial court, sitting without a jury, found that certain work performed by Daily on June 18, 1980, was "a part of the overall construction agreement as amended by the numerous change orders," and so found that Daily's filing of his statement of claim for lien on

October 15, 1980, was timely with regard to the four-month limitation provision of section 7 of the Mechanics' Liens Act (Ill. Rev. Stat. 1983, ch. 82, par. 7). Consequently, the court held that Daily's mechanic's lien "takes priority over all other liens," including MidAmerica Carbondale's $575,000 mortgage lien, filed March 28, 1980.

MidAmerica Carbondale appeals from the judgment giving priority to Daily's $20,514.20 mechanic's lien. The bank contends that its mortgage should take priority because Daily failed to meet the statutory limitation deadline, in that the work performed on June 18 was "trivial" and "in the nature of repairs to already completed work," and so such work did not extend the period for filing.

The contract for labor only was signed October 19, 1979. Daily began work the same day. Daily and defendants, Halstead and Peak, entered into a series of additional agreements for additional work to be performed. Daily testified regarding 10 separate change orders or additional work requests made by Peak from November 1979 through February 1980, some of which also required supplying materials. Daily recounted that he was paid for seven of the additional projects but was paid only in part for the remaining three. All the while, he testified, he was paid biweekly for the work which was progressing under the original contract, and which continued to progress steadily until February when defendants "were slowing down on paying." His last payment received was on April 22, 1980.

Daily testified that the last of his workers worked at the site through June 1, 1980. When asked, "Now when did you finish the work that you have done on this project that we have talked about?" Daily replied that it was June 12. It was on June 12, he further testified, that he sent one of his workers to the site to pick up the tools he had left on the job. Asked whether he was finished with the job he replied, "No," but that he stopped work because he "couldn't operate without the money."

On June 18, Daily returned to the site, at Peak's request and under Peak's assurance of payment, to fix two doors which had been vandalized. He testified that he took the doors down, readjusted the hinges and set new pieces, and replaced the retainer springs on the locksets. This work took four hours to complete.

At the heart of this dispute are divergent interpretations of section 7 of the Act, which provides:

> "Sec. 7. No contractor shall be allowed to enforce such lien against or to the prejudice of any other creditor or incumbrancer or purchaser, unless within 4 months after completion, or if extra or additional work is done or material is delivered there-

for within 4 months after the completion of such extra or additional work or the final delivery of such extra or additional material, he or she shall either bring an action to enforce his or her lien therefor or shall file in the office of the recorder of the county *** a claim for lien, ***." Ill. Rev. Stat. 1983, ch. 82, par. 7.

Initially, we distinguish this case on its facts from those involving a completed contract where the putative lienor performed extra or additional work well beyond the date of its completion. (See, *e.g., P. H. Broughton & Sons, Inc. v. Muller & Allen Realty Co.* (1976), 40 Ill. App. 3d 776, 353 N.E.2d 30; *Miller Brothers Industrial Sheet Metal Corp. v. La Salle National Bank* (1969), 119 Ill. App. 2d 23, 255 N.E.2d 755.) Also to be distinguished from the instant case are those situations where the claimed work was held to be an unwarranted attempt to revive a lien which had been lost before the adjustment, repair or maintenance was done. See, *e.g., Alexander Hendry Co. v. Mooar* (1926), 242 Ill. App. 516.

The object and purpose of the Mechanics' Liens Act is to protect those who in good faith furnish material or labor for the construction of buildings. (*Miller v. Reed* (1973), 13 Ill. App. 3d 1074, 302 N.E.2d 131.) Choosing any particular date from October 19, 1979, to June 1, 1980, it cannot be disputed that Daily was entitled to enforce his lien for the value of what had been done to that chosen date. (Ill. Rev. Stat. 1983, ch. 82, pars. 1 and 4.) Daily had worked continually during this period pursuant to the original contract, and it would seem that each request by Peak for additional work on the unit project extended the time for filing a lien notice to four months beyond the time the additional work was done.

But to conclude that a statement must have been filed within four months of each project's completion would be unreasonable. It is evident, and we think important under these circumstances, that Daily, soon after the contract was signed, although retained originally for a limited purpose, became a "catch-all" or general purpose contractor who, upon Peak's numerous requests, performed extra or additional work to suit the owners' needs. The request regarding the work done on June 18 was not unlike any of the other requests to that date. We attach no significance to the work done on June 1 nor to Daily's removal of his tools from the site on June 12. The significant date, since the contract was not completed, is the date on which Daily completed work for which the lien is claimed. (*Components, Inc. v. Walter Kassuba Realty Corp.* (1978), 64 Ill. App. 3d 140, 381 N.E.2d 42.) This, we believe, includes for all practical purposes the work completed at

Peak's request and assurance of payment on June 18. Peak's last request and Daily's compliance were consistent with their *modus operandi*. Contrary to the bank's suggestion, we do believe Daily should be allowed to "tack on" this work to the work done under the original contract.

Regarding the bank's contention that the doors were already completely installed, thus obviating the necessity for additional work but for the "repair" damage, suffice it to say that additional work *was* required and performed, if not pursuant to the original contract, then pursuant to a request for additional work consistent with the method of project management up to that time.

We cannot say on this record that the trial court was manifestly erroneous in concluding that the work performed on June 18 was essentially extra or additional work done as a part of the overall construction agreement as amended. Consequently, it appears that Daily's mechanic's lien was timely filed and is therefore entitled to priority over the bank's mortgage lien.

For these reasons the judgment of the circuit court of Jackson County is affirmed.

Affirmed.

HARRISON and KASSERMAN, JJ., concur.