JAMES R. FISHER, d/b/a Fisher Construction Company, Plaintiff, v. HARRIS BANK & TRUST COMPANY, Trustee, *et al.*, Defendants (Edward Hines Lumber Company, Counterplaintiff-Appellant; James R. Fisher *et al.*, d/b/a Fisher Construction Company, *et al.*, Counterdefendants-Appellees).

Second District   No. 2—86—0397

Opinion filed March 31, 1987.

Riccardo A. DiMonte, of DiMonte & Lizak, of Chicago, for appellant.

Joan Osran, of Palatine, for appellee, *pro se.*

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiff, James R. Fisher, d/b/a Fisher Construction Company (hereinafter Fisher), filed a complaint for foreclosure of his mechanic's lien claim against defendants, Harris Bank & Trust Company, as trustee under trust No. 41979, Frank A. and Bozema Plaminek (hereinafter Harris and Plamineks shall be referred to jointly as owners), Avondale Savings Bank, Edward Hines Lumber Company (hereafter Hines), and certain other known and unknown lienholders and owners. Thereafter, Hines filed a counterclaim against the owners and Avondale for mechanic's lien foreclosure. The owners filed a motion

for summary judgment which was granted by the trial court. Hines appeals.

Hines raises the following issues on appeal: whether the trial court erred in granting the motion for summary judgment and whether the delivery of a materialman's waiver of lien constitutes an absolute defense for the owners to that materialman's lien suit under the circumstances of this case.

In his complaint, Fisher alleged that he had entered into a written contract with the owners for the construction of an addition to their home, at a price of $57,280 and extras in the amount of $36,594.03. He further alleged he had been paid $40,742 and that there was due him $52,032.03. Upon being served with a copy of the Fisher complaint, Hines filed an answer and a counterclaim, alleging delivery of materials to the subject premises pursuant to a verbal agreement with Fisher and that there was due and owing to Hines the sum of $10,170.56.

On August 20, 1984, Frank Plaminek filed an answer to Hines' counterclaim, denying the allegations. On October 4, 1984, Fisher filed an amended complaint alleging, *inter alia,* that as part of a scheme to defraud him, the owners stopped payment on a check for $10,000 issued by them to Fisher. On December 13, 1984, Hines filed a motion to strike the answer of Frank Plaminek to Hines' counterclaim. The motion was granted, and Plaminek was given 45 days to file an amended answer. Instead, on January 29, 1985, a motion for stay of proceedings was filed on behalf of the owners. The motion requested that the matter be submitted to arbitration as provided for in the construction contract. However, on March 11, 1985, the motion was withdrawn.

On March 18, 1985, the owners filed a motion for summary judgment, alleging that Hines had signed a waiver of mechanic's lien against the premises. The motion also alleged that Fisher had executed a sworn contractor's affidavit stating that $26,202 had been paid him and that all costs, liens, and construction debts had been paid. Copies of both the waiver of lien and the contractor's affidavit were attached as exhibits to the motion.

In response to the motion for summary judgment, Hines stated that the contractor's affidavit stated on its face that payout would be made 48 hours after examination of the waivers and that in paragraph 3 of the construction contract between Fisher and the owners it stated "[p]rior to receipt of any payment, contractor will deliver a sworn contractor's affidavit showing all subcontractors who have supplied labor and material, together with waivers of mechanic's lien

from all of the parties who performed labor or who supplied material." Thus the owners were aware of the industry custom of submitting lien waivers prior to payment.

Thereafter, the owners were granted leave to file an amended motion for summary judgment. The amended motion added as a basis for summary judgment that Hines had failed to serve the notice to the owner required by sections 5 and 21 of "An Act relating to *** material men's liens ***" (the Mechanics' Liens Act) (Ill. Rev. Stat. 1983, ch. 82, pars. 5, 21) and was accompanied by the affidavit of Frank Plaminek. In response to the amended motion, Hines maintained that it did serve the required notice, by first sending the notice certified mail, which was returned unclaimed, and by delivering a copy of the notice to a maintenance man on the premises. Hines further stated that even if the notice had not been served within the 14 days as required by the statute, its lien would still be preserved, but only to the extent that the owner had not been prejudiced by payments made prior to the receipt of the notice. Hines maintained that since the only check intended for Hines was the $10,000 check which owners had stopped payment on, there was still a genuine issue of material fact as to whether owners were prejudiced thereby.

On September 16, 1985, the trial court issued a somewhat confusing and contradictory letter opinion on the owners' amended motion for summary judgment. In its letter opinion, the trial court first stated that summary judgment should be granted, apparently on the basis that the owners had relied on the waiver of lien issued by Hines. The trial court stated:

> "Based upon the foregoing, *** it would appear thsat [sic] 'Plaminek's' motion for Summary Judgment should be granted. 'Plaminek's' counsel will prepare an appropriate order and have same entered upon due notice to all parties."

The trial court then went on to discuss the owners' contention that Hines' lien should not attach because Hines had failed to comply with the notice requirements of sections 5 and 21 of the Mechanics' Liens Act (Ill. Rev. Stat. 1983, ch. 82, pars. 5, 21). The trial court then concluded that there had been no personal service on the owners as required by the statute.

However, the trial court then stated that Hines had filed an affidavit stating that the owners had stopped payment on the check given to Fisher to pay Hines. Thus it appeared to the trial court that Hines should be allowed to repudiate its lien waiver. The trial court then stated as follows:

> "Based upon the foregoing, the Court will find that a ques-

tion of fact exists; and that the 'Plaminek's' motion for summary judgments should be denied. Counsel for Hines will prepare an appropriate order and will submit same to this Court upon proper notice to all parties."

On October 3, 1985, an order was entered denying the owners' motion for summary judgment, but also continuing the matter to November 15, 1985, for rehearing on the owners' motion for summary judgment. On October 28, 1985, the owners filed their motion for reconsideration. On November 15, 1985, the trial court took the matter under advisement, and on February 14, 1986, issued its letter opinion. The trial court concluded that since there was no proof adduced that the 14-day notice was served either in person or by certified mail, no mechanic's lien attached to the property, and, accordingly, granted the owners' amended motion for summary judgment.

Thereafter, Hines filed a motion for correction of order and rehearing. Hines alleged in the motion that on November 15, 1985, counsel for Hines had displayed in open court the original proof of mailing of the 14-day notice and that after examination of the notice by both the trial court and counsel for the owners, counsel for the owners acknowledged that the notice satisfied the requirements of the statute and that the only issue before that court on rehearing was the issuance of Hines' lien waiver. On March 3, 1986, the trial court entered an order which provided in pertinent part as follows:

"It is hereby ordered, judged and decreed that Harris' Amended Motion for Summary judgment and Frank A. Plaminek and Bozena Plaminek's Amended Motion for Summary Judgment against Hines Lumber Co. is hereby granted. The Court finds that the 14 day Notice as required by Sections 5 and 21 of the Mechanic's Lien Act were met. Hines' furnishing of a lien waiver to Plaminek and Fisher barred its right to foreclose a mechanic's lien. The Court further finds no just reason to delay enforcement or appeal of this Order."

On April 1, 1986, Hines filed a motion for rehearing which was denied on April 15, 1986. This appeal followed.

Hines contends that the owners' motion for summary judgment was filed and granted prematurely since the owners never filed an answer to Hines' counterclaim. Hines argues that it was unduly prejudiced by the trial court's order allowing the owners to file the motion for summary judgment since the defenses raised in the motion were affirmative in nature, thus denying Hines the right to file a reply to them.

■ The record in this case reveals that on August 20, 1984,

Frank Plaminek filed an answer to the Hines counterclaim. However, on December 13, 1984, his answer was stricken, and he was given 45 days to file an amended answer. Instead, the owners filed a motion to stay proceedings, which was later withdrawn, and a motion for summary judgment was filed. However, the record fails to reveal any objection by Hines to the filing of the motion for summary judgment by the owners, and, therefore, the argument is waived. *First Security Bank v. Bawoll* (1983), 120 Ill. App. 3d 787.

Summary judgment is proper where the pleadings, depositions, and admissions on file, together with affidavits, if any, show that there is not a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Wysocki v. Bedrosian* (1984), 124 Ill. App. 3d 158, 164; Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c).

In arguing that a genuine issue of fact exists as to whether the owners innocently relied on Hines' lien waiver, Hines relies on the following: conflicting affidavits as to whether the owners knew that Hines had not been paid; that the owners' contract with Fisher provided that "[p]rior to the receipt of any payment, contractor will deliver a sworn contractor's affidavit showing all subcontractors who have supplied labor and materials, together with waivers of mechanic's lien from all of the parties who performed labor or supplied materials"; and that the contractor's affidavit indicated on its face that payouts would be made 48 hours after the receipt of the waivers for examination. Hines also argues that the following questions remain unresolved; whether the $10,000 check issued by the owners was intended for Hines; whether the owners paid out funds in reliance on the waiver and were thus prejudiced by Hines' lien claim; and whether the owners are guilty of fraud for stopping payment on the $10,000 check.

In *Edward Hines Lumber Co. v. Dell Corp.* (1977), 49 Ill. App. 3d 873, the court stated as follows:

> "[T]he issue is whether Des Plaines, once having issued its lien waiver, may subsequently repudiate it and assert their claim. In light of the proof adduced as to the industry custom for lien waivers to be given before payment has been made, the defendants' knowledge and use of the aforesaid custom, and the express agreement of the parties to employ a joint check to assure Des Plaines' payment for material we hold that Des Plaines may repudiate their lien waiver." 49 Ill. App. 3d 873, 884.

On the other hand, in *Contract Builders Service Corp. v. Eland*

(1981), 101 Ill. App. 3d 366, we held that an innocent party has a right to rely on a signed lien waiver and under these circumstances, a contractor will not be permitted to come to court and attack its own freely issued document. 101 Ill. App. 3d 366, 373.

In *Country Service & Supply Co. v. Harris Trust & Savings Bank* (1981), 103 Ill. App. 3d 161, Country Service entered into a subcontract with the contractor to perform certain excavation work. As the work progressed, Country Service submitted its lien waivers and was paid accordingly. Later, when further payments for work were not forthcoming, Country Service perfected its mechanic's lien and filed a complaint against Harris, the land trustee, to foreclose the lien. Harris filed a motion for summary judgment, stating that from time to time during the work, payments had been made to Country Service and for each payment Country Service had executed and delivered a lien waiver which released all claims for work performed prior to April 18, 1978, the date of the last waiver of lien. In support of its motion, Harris attached the affidavit of the president of the Bank of Commerce and Industry stating that the lien waivers were taken by the bank and were intended to waive all lien rights to the dates indicated thereon and that payments would not have been made otherwise. Country Service responded that it had presented lien waivers, but asserted that the waivers were only partial and were understood and intended by the parties to waive Country Service's lien rights only to the extent of the sums actually paid. Country Service submitted the affidavit of its president, stating that the lien waivers in question had been executed by him or at his direction and that it was his intention they should be effective to waive Country Service's lien rights against Harris' premises only to the extent of the sums received from time to time and to preserve the balance set forth on a statement of account noted on the payout order accompanying the lien waiver. It was also stated in the affidavit that it was customary in the building industry in Lake County to use such a lien waiver form for waiver lien rights only to the extent actually received. Country Service also submitted affidavits from other contractors, an officer of the Lake County Contractor's Association and a title officer from the Lake County office of Chicago Title Insurance Company, each of whom stated that "lien waiver to date" forms were considered to waive lien rights only to the extent of the money received by them to the date of the lien waiver and that all other lien rights are preserved. Harris responded with an affidavit of the president of the general contractor stating that the lien waivers were intended and so stated that they waived Country Service's lien rights to their respec-

tive dates.

The trial court found that the lien waiver precluded the enforcement of Country Service's mechanic's lien as a matter of law and granted Harris' motion for summary judgment.

In affirming the granting of summary judgment, this court stated as follows:

> "It is well established that, absent ambiguity in the written terms of a contract, the language of the instrument provides the sole criteria of the intention of the parties. [Citation.] Where its terms are plain and unambiguous, the intent of the parties must be ascertained solely from its language. [Citations.] Whether an ambiguity exists is a question of law to be initially determined by the court before any extrinsic evidence may be considered. [Citations.]
>
> We do not agree that the lien waivers executed by Country Service may realistically be considered ambiguous. Each of them states in clear, express language that they release and waive any mechanics' lien or right to such lien against the subject premises due or to become due from the owner on account of labor, material or services heretofore *furnished to this date* by Country Service. Nor does reference to the separate form designated as a payout order lend weight to Country Service's argument by limiting application of the lien waivers to the payment made when each was submitted. At most, the statement of account on the payout form simply provides a review of the status of the contract between Country Service and the contractor, Malone. It does not suggest that the designated 'balance' was for work actually performed under the contract for which Country Service was then entitled to payment nor does it provide by its terms for a reservation of lien rights contrary to the express terms of the lien waivers. The construction urged by Country Service is unacceptable in light of the explicit terms of the lien waiver forms tendered by it for payment. Such construction would also be in conflict with the contractor's affidavit submitted by plaintiff in which Country Service affirmed that the lien waivers were delivered unconditionally and there was nothing due or to become due to any persons for material or labor in connection with the work." (*Country Service & Supply Co. v. Harris Trust & Savings Bank* (1981), 103 Ill. App. 3d 161, 165-66.)

This court went on to note that Country Service had conceded that the Bank of Commerce and Industry that had made the payouts to

Country Service believed that the "balance" noted on the statement of account was the balance needed to complete the contract and not, as Country Services was now suggesting, the balance then due it. Applying the "innocent party" rule, and there being no issue of fraud raised in the case, we concluded that there was no ambiguity in the terms of the lien waivers which would permit the consideration of extrinsic evidence. Therefore, there was no basis for the consideration of the conflicting affidavits.

■ Likewise here, we have examined the waiver of lien and find it to be unambiguous. Further, in the case before us, the contractor's affidavit is a separate document, and its terms would be extrinsic evidence which may not be considered where the terms of the waiver are unambiguous. Nor may we consider the terms of the construction contract between the owners and Fisher for the same reasons.

■ However, while a clear unambiguous waiver of mechanic's lien rights bars an action under the Mechanics' Liens Act, this rule is only applicable where an innocent party has relied upon that waiver in making payments to the general contractor. (*Luczak Brothers, Inc. v. Generes* (1983), 116 Ill. App. 3d 286, 298.) It is a question of fact as to whether the owners here relied upon the waiver when they made their payments to the general contractor, Fisher. See *Luczak Brothers, Inc. v. Generes* (1983), 116 Ill. App. 3d 286, 298.

■ We agree with Hines that the pleadings and affidavits in this case indicate that there exists a question of fact as to whether the owners innocently relied on Hines' waiver of lien. As stated earlier, both the contractor's affidavit, as well as the construction contract between Fisher and the owners, indicated that payments would be made after the receipt of the waivers. Further, unlike the situation in *Country Service & Supply Co. v. Harris Trust & Savings Bank*, an issue of fraud has been raised in this case. In his amended complaint, Fisher alleged in pertinent part as follows:

"9. That Defendants Frank A. Plaminek and Bozema Plaminek commenced a scheme and plan on or about October 6, 1983 to induce Plaintiff to perform work, and to supply labor and materials, on the premises commonly known as 966 Plum Tree Road, Barrington, Illinois and legally described in Exhibit B with the intention of not fully paying Plaintiff for the work performed.

10. That some of the actions of Defendant, Frank A. Plaminek and Bozema Plaminek, in furtherance of such plan and scheme were:

\* \* \*

c. Inducing Plaintiff to deliver to Defendants, at the time a contractor's draw was requested, waives [sic] of liens for work performed to date in exhange [sic] for their payment, issuing to Plaintiff their check for work performed under said draw in the amount of $10,000.00 and thereafter immediately stopping payment on said check and refusing thereafter to remit any payment for the work performed under the aforementioned contractor's draw;

\* \* \*

13. That the plan and scheme of Defendants, Frank A. Plaminek and Bozema Plaminek was and did deprive and defraud Plaintiff of monies due for work performed and such scheme was intentional and knowlingly [sic] carried out by said Defendants to defraud Plaintiff."

These factors are at variance with Frank Plaminek's affidavit in which he stated that he was unaware of the industry custom of tendering waivers before payment is received and that he did not know that Hines had not been paid. Further, these issues of fact are material, for if Hines can show that the owners did not innocently rely on the waivers, then Hines may repudiate its waiver of lien. See *Edward Hines Lumber Co. v. Dell Corp.* (1977), 49 Ill. App. 3d 873.

We conclude therefore that the trial court erred in granting the owner's motion for summary judgment. Deciding the case as we do, there is no need to address the other arguments raised by Hines.

The judgment of the circuit court of McHenry County is reversed, and the cause remanded for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

REINHARD and NASH, JJ., concur.