**In re T. BRADY MECHANICAL SERVICES INC., Debtor.**

**Bankruptcy No. 90 B 12353.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Nov. 18, 1991.

Charles J. Myler, Richard G. Larsen, Myler, Ruddy & McTavish, Aurora, Ill., for debtor.

Stephen T. Bobo, Towbin & Zazove, Ltd., Chicago, Ill., for G & O Thermal.

David R. Brown, River Forest, Ill., for Reliance Ins.

Thomas A. Cengel, Pasquesi, Cengel & Pasquesi, Highland Park, Ill., for F.E. Moran, Inc.

Margaret Anderson, Jennifer L. Sucher, Lord, Bissell & Brook, Chicago, Ill., for Baltimore Air Coil.

Paul Lehner, Tyrrel J. Penn, Schuyler, Roche & Zwirner, Chicago, Ill., for Maram Corp.

Steven Bright, Boehm & Pearlstein, Chicago, Ill., for American Nat. Bank of Arlington Heights.

Mark L. Dressel, Morgan, Lanoff, Denniston & Madigan, Ltd., Chicago, Ill., for G & O Thermal Supply.

Larry M. Wolfson, C. David Watson, Jenner & Block, Chicago, Ill., for Reliable Sheet Metal.

Michael J. Hamblet, Donald E. Vacin, Hamblet, Casey, Oremus & Vacin, Chicago, Ill., for JWP Technical Services Corp.

Burton A. Gross, Chicago, Ill., for Holian Insulation Co.

Edward S. Lipsky, Chicago, Ill., for Automatic Bldg. Controls.

## MEMORANDUM OPINION

RONALD S. BARLIANT, Bankruptcy Judge.

The Debtor was a mechanical sub-contractor. The Debtor wants the Court to determine the status of creditors who claim to have liens as a result of their work on various projects as the Debtor's sub-contractors. The Debtor's assets include accounts receivable from the prime contractors on these projects. American National Bank holds a perfected security interest in all of the Debtor's assets, including these accounts receivable. The creditors here claim to have prior liens on the basis of Illinois mechanics' lien laws and equitable theories.

The Illinois Mechanics Lien Act (MLA), Ill.Rev.Stat. ch. 82, ¶ 1 et seq., gives a sub-contractor a lien for the value of its work on the realty of the owner and on the monies due from the owner to the contractor. The lien claim must be recorded within 4 months after completion under the contract. Section 7. Notice of the lien must be given to the owner "within 90 days after the completion thereof, or, if extra or additional work or material is delivered thereafter, within 90 days after the date of completion of such extra or additional work or final delivery of such extra or additional material." Section 24. Alternatively, if the sub-contractor is listed on the contractor's Sworn Statement, the § 24 notice requirement is satisfied. Sections 5, 22.

*Maram Corp.*

■ Maram was involved on two projects. Both projects present the same issue: Did Maram perform work covered by the MLA within the period set by MLA §§ 7 and 24?

For the Riverway project, Maram served its § 24 notice on October 15, 1990, and recorded its Sub-contractor's Lien on October 31, 1990. The Debtor asserts that the last date on which Maram performed lienable work was March 28, 1990, and therefore their filing and notice were not timely. Maram asserts that its last lienable work was performed on October 4, 1990, making both notice and filing timely. The October 4th work consisted of shipping water treatment chemicals.

On the Downers Grove Project, Maram served its § 24 notice on August 28, 1990, and recorded its lien on September 28, 1990. The Debtor claims that Maram's last lienable performance occurred on May 25, 1990. Maram asserts that its last lienable performance was on June 14, 1990. This work included training the owner's operator in the water treatment system and, according to the Debtor, chemical testing.

Although the parties themselves focus on contract/warranty distinctions and the significance of the work performed, the real question is whether Maram performed work that added to the value of the property within the required period. "As a general rule, only that which is actually used, or incorporated into the building is lienable." *Verplank Concrete & Supply v. Marsh*, 40 Ill.App.3d 742, 353 N.E.2d 27, 29 (1976). Shipping chemicals and personnel training are not, in any obvious sense, incorporated into a building. There is little room to expand the concept of "incorporated into a building." "Illinois courts have held that while the [Illinois Mechanics Lien Act] should be construed liberally as a remedial one, it, being in derogation of the common law, is strictly construed with reference to the requirements upon which the right to a lien depends." *Robinette v. Servite Fathers*, 49 Ill.App.3d 585, 586, 7 Ill.Dec. 518, 364 N.E.2d 679 (1977).

In *D.M. Foley Co., v. Northwest Federal Savings & Loan*, 122 Ill.App.3d 411, 77 Ill.Dec. 877, 461 N.E.2d 500 (1984), the issue was the extent to which landscaping services were lienable. The Court distinguished initial placement of vegetation, which enhanced the value of the property, and consequently could support a lien, from subsequent measures required to maintain the vegetation, which did not enhance the value of the property, and hence could not support a lien. "The 'maintenance' services were not intended to aid in the initial settlement of materials in the ground, but were designed instead as subsequent measures necessary to maintain the vitality of the living materials. Mere replacement of once-viable material does not enhance the property, as is required by statute." In *Bull v. Mitchell*, 114 Ill.App.3d 177, 184, 70 Ill.Dec. 138, 448 N.E.2d 1016 (1983) the court considered maintenance on and storage of a boat.[1] "We are aware of no cases in which material, labor and services rendered on behalf of a vessel for the purposes of merely maintaining and storing it have been held sufficient to entitle the person or entity furnishing such material, labor and services to a mechanics lien under this statute." The work at issue here is analogous to the work in *Foley* and *Bull*. Both the shipment of chemicals and the personnel training were designed to maintain a system already installed. As such it does not add to the value of the property and therefore is not lienable.

■ Maram emphasizes the importance of the work that was done. Importance, however, is not determinative of lienability. Few mechanical systems continue to perform properly without systematic maintenance, but maintaining value is not adding value. "Where the work completed is merely a repair to, or maintenance of, work already performed, the time for filing a claim for a mechanics lien is not extended." *In re California Steel*, 21 B.R. 383, 387 (Bkrtcy.N.D.Ill.1982). "It would be inconsistent with the rules of strict construction

that must be used in relation to the Mechanics' Lien Act to find that the time to file a lien could be extended by maintenance or correction of completed work." *Miller Bros. v. LaSalle National Bank*, 119 Ill.App.2d 23, 30, 255 N.E.2d 755 (1970).

■ Maram also points out that the work in question was required under its contracts with the Debtor. This too is beside the point. It is not what is actually mentioned in the contract, but the nature of the work and its completion that matters. In *DuPage Bank v. DuPage Bank*, 122 Ill.App.3d 1015, 1017, 78 Ill.Dec. 309, 462 N.E.2d 25 (1984), the Court explained that the test is whether the contract could be considered complete prior to the performance of the additional work. The *Miller* court relied heavily on the timing of the invoice to determine completion. When the bill for final payment was submitted, the contract was complete even though the contractor did maintenance work after that date. In our case, the contracts were billed as complete prior to the work in question.

The *Foley* court considered the same problem but used another analysis. Rather than explaining that a contract could be complete with some work still outstanding, it divided contract work into lienable/non-lienable. In deciding that maintenance work was not lienable, the *Foley* court interpreted the statute, " 'Completion' as used in section 7 does not refer to completion of the contract. It means completion of the work for which a contractor seeks to enforce his lien." This returns us to the adding value/maintaining value distinction, which as discussed above, makes the work in question here non-lienable.

For these reasons, the Court finds that Maram's work in supplying chemicals and training personnel is not lienable. Consequently, Maram's lien and § 24 notice were not timely and Maram's claim is not secured.

1. *Bull* considers a different section of the Mechanics' Lien Act from the one at issue here. However, that section, § 37, specifically states that a mechanics lien shall be imposed on a watercraft under the same conditions as when imposed on a building. Because the issue in *Bull* was precisely those conditions, it is relevant to this case.

*G & O Thermal—Downers Grove*

G & O supplied refrigerant for this project. It was delivered on April 2, 1990, and G & O billed the Debtor $50,341.78. There is no dispute about the amount due or about the fact that G & O has not been paid. G & O did not serve its mechanics' lien notice until July 17, 1990, and did not record its lien until July 26, 1990. These were not timely, and consequently, G & O does not have a valid mechanics' lien. On April 24, 1990, the Debtor submitted its Sworn Statement to James Anderson Inc., under which it had sub-contracted, which failed to list G & O even though the refrigerant had already been delivered to the job site, and had already been invoiced. On September 18 and October 3, the Debtor did list G & O on its Sworn Statements.

■■■ G & O now claims a priority position based on equitable lien or constructive trust. Neither Illinois law nor bankruptcy law support G & O's claim. Illinois law is clear that absent compliance with the provisions of the appropriate liens' statute, a sub-contractor has no right of action against the owner of property. *Canton v. Chorbajian*, 88 Ill.App.3d 1015, 1024, 44 Ill.Dec. 74, 410 N.E.2d 1166 (1980). Equitable liens are not favored in bankruptcy, especially in this context. "A creditor who failed to take the steps necessary to perfect a security interest should not be provided with a favorable position by the Bankruptcy Court at the expense of other creditors who had no notice of that interest." *In re Hendleman*, 91 B.R. 475, 476 (Bkrtcy.N.D.Ill.1988). For the most part, bankruptcy cases which recognize equitable liens have involved fraud. *Matter of Einoder*, 55 B.R. 319, 329 (Bkrtcy. N.D.Ill.1985). However, we need not try to stretch the law to find loopholes for G & O. The Bankruptcy Code makes the issue of equitable liens irrelevant. Under § 544(a), the Trustee, or in this case the Debtor, assumes the status of a hypothetical lien creditor. As such, it can defeat any lien which is unperfected on the date of filing. An equitable lien is just such an unperfected security interest. *Einoder*, at 328. It would be a pointless exercise for the court to find that G & O had an equitable lien just so that Debtor could avoid it.

■■■ G & O states that the Court could impose a constructive trust which would (according to G & O) obviate this problem. G & O has not shown all the elements necessary for a constructive trust. Before the Court can impose a constructive trust there must be a showing of "unconscionable conduct." *Suttles v. Vogel*, 126 Ill.2d 186, 127 Ill.Dec. 819, 827, 533 N.E.2d 901, 909 (1988). "To impress a constructive trust there must be at least a wrongdoing greater than the nonpayment of a monetary debt." *Matter of Monnig's Dept. Stores*, 929 F.2d 197, 203 (5th Cir.1991). G & O asserts, and the Debtor admits, that it failed to list G & O on its Sworn Statement, but such an omission is still a far cry from fraud or unconscionable conduct.

■■■ The court in *In re Tonyan Construction Co.*, 28 B.R. 714, 724–25 (Bkrtcy. N.D.Ill.1983), did impose a trust under circumstances that were in some ways similar to those that we confront. But, *Tonyan* is factually distinguishable. In *Tonyan* the funds were released to the Debtor for the specific purpose of paying the sub-contractors. In our case, the funds have not been released to the Debtor. Also, even if *Tonyan* can be read to support a constructive trust in our situation, we decline to follow it. Illinois law, which is controlling here, requires wrongdoing to impose a constructive trust. The burden is on the party who wants the trust imposed. *In re Independent Clearing House, Inc.*, 41 B.R. 985, 1001 (Bkrtcy.D.Utah 1984). Wrongdoing has not been shown. The Court will not impose a constructive trust and G & O will be treated as a general unsecured creditor.

*JWP Technical Services, Kingsbury Project*

■■■ JWP presents essentially the same legal issue as Maram. Again we are confronting the question of lienability. Here the issue is the difference between warranty work and contract work. JWP Technical Services subcontracted with the Debtor to provide temperature control devices on the Kingsbury Project. JWP has submitted a

claim for $19,080. As with Maram, the issue here is timing and the characterization of work performed.

JWP sent its § 24 notice on August 24, 1990, and filed its Sub-contractor's lien on September 21, 1990. JWP asserts that it performed contract work for the Debtor on May 30, 1990, or later. The Debtor asserts that JWP's contract work was completed on August 15, 1989, or at the latest, October 31. If JWP's date is correct, the notice and filing were timely; if the Debtor's is correct, neither was timely.

There is no question that JWP did work on the Kingsbury Project site up to May 30, 1990; the question the Court must answer is whether the work done was contract work that is lienable, or warranty work that is not lienable. We find that the work was warranty work, and that therefore the notice and filing were not timely.

On August 15, 1989, Communications Management Corporation, JWP's predecessor, sent the Debtor a Job Completion Letter for the Kingsbury Center project. (JWP X5). The letter is headed "Final Job Completion" and states,

> As of today, Communications Management has completed all items included in the contract for the above named project. This includes satisfaction of all known punch lists or other correspondence concerning this job. Signing of this form shall constitute final acceptance of said project, and will be considered mutual agreement that the contract conditions have been met.... All warranty work from this point forward will be handled by CMC's Service Department ... In some cases, due to circumstances beyond CMC's control, it may be necessary to complete minor items during the warranty period.

On October 31, 1989, Thomas Brady signed the Completion Letter for the Debtor, and returned it to JWP. On January 24, 1990, Kevin Lewis, JWP's project manager, wrote to Brady stating, among other things, "JWP went to great efforts to gear up for this project with very little notice and completed it well in advance of tenant occupancy." (JWP X7).

These documents notwithstanding, JWP now asks the Court to find, that it performed contract, as opposed to warranty, work in May of 1990. The work in question includes relocating a malfunctioning sensor and fixing a damper motor that was hanging in midair.[2] In his April 26, 1990 letter to the Debtor regarding JWP's obligation to perform specifically this work, Douglas Anderson, JWP's Customer Support Manager, wrote, "While JWP Technical Services is willing to complete any obligations it has under warranty, I would like to point out the following. First of all, this project was completed and accepted by your company last year. Secondly, multiple requests for a punch list on this project were never answered." (JWP X10).

The problems with both the sensor and the damper motor resulted from incorrect initial placement. Both had operated correctly for about 6 months, but malfunctioned when the outside temperature dropped. This kind of corrective work is warranty repair work that does not extend the time to file a lien. The situation here is similar to the situation in *Miller*, in which glazers returned to reset loose gaskets. The *Miller* court explained, 119 Ill.App.2d at 30, 255 N.E.2d 755:

> A "resetting" of the loose gaskets obviously implies that there had been an earlier "setting" and that the subsequent work was to correct some malfunction. It would be inconsistent with the rules of strict construction that must be used in relation to the Mechanics' Lien Act to find that the time to file a lien could be extended by maintenance or correction of completed work.

Just as "resetting" implies an initial "setting," so the reinstallations that JWP performed imply an initial installation. Courts have found that, under certain circumstances, later rectification of earlier work can extend the filing date. In *DuPage*, the

---

**2.** JWP also performed other work after October 31, 1989, but makes no claim that this other work was not strictly warranty work.

contractor moved vent stacks, whose initial faulty placement made the building entirely unsuitable for its intended purpose, and which never worked properly. This is not our situation. In *Daily v. Mid–America Bank & Trust*, 130 Ill.App.3d 639, 85 Ill. Dec. 828, 474 N.E.2d 788 (1985), the plaintiff fixed two doors that had been properly installed, and then vandalized. However, in finding that the date of this repair was the date of completion for lien purposes, the court placed great importance on the fact that while initially hired for a limited purpose, the plaintiff subsequently became a general purpose contractor for the owners. Again, this is not our situation.

In short, the kind of work JWP performed for the Debtor in May conforms to its earlier assertions regarding the job's completion. The Court finds that the May work was warranty work and thus did not extend the filing time.

*JWP, Central States Project*

JWP also sub-contracted with the Debtor on the Central States project. The issue here is the effect of lien waivers. The parties stipulate that JWP is owed $122,-439.50. Of this sum, $31,672 is the subject of two lien waivers furnished by JWP to the Debtor, one on April 2, 1990 for $21,-000, and one on July 6, 1990 for $10,672. The Debtor admits that JWP was never paid for these waivers, and asserts that JWP is now an unsecured creditor to that extent. JWP asserts that since it was not paid the waivers are invalid or repudiated.

■ The general rule is that a lien waiver may not be repudiated for lack of consideration. *In re Tonyan*, 28 B.R. 714, 724 (Bkrtcy.N.D.Ill.1983), citing *William Aupperle & Sons v. American National Bank & Trust Co.*, 28 Ill.App.3d 573, 329 N.E.2d 458 (1975). Unfortunately, the Court has not been provided with copies of the waivers. If the waivers are unambiguous, the general rule is that the waiver is to be read at face value. *Country Service & Supply Co., v. Harris Trust & Sav. Bank*, 103 Ill.App.3d 161, 58 Ill.Dec. 599, 430 N.E.2d 631 (1981). However, courts have carved some exceptions to this rule.

In *Fisher v. Harris Bank & Trust Co.*, 154 Ill.App.3d 79, 106 Ill.Dec. 711, 506 N.E.2d 418 (1987), the court stated that, "This rule is only applicable where an innocent party has relied upon the waiver in making payments to the general contractor." In *Fisher*, there was reason to believe that owners had fraudulently induced the plaintiff to deliver waivers, and for that reason their "innocence" was questioned. See also *Premier Electrical Construction Co. v. LaSalle National Bank*, 132 Ill.App.3d 485, 87 Ill.Dec. 721, 477 N.E.2d 1249 (1984). In our situation, we have no allegations of fraud of any kind. Consequently, we follow the reasoning in *Aupperle* that an unambiguous waiver is a complete defense to a lien claim.

■ *Edward Hines Lumber v. Dell Corp.*, 49 Ill.App.3d 873, 7 Ill.Dec. 207, 364 N.E.2d 368 (1977), carved out a larger, murkier exception. "Rather the issue is whether Des Plaines, once having issued its lien waiver, may subsequently repudiate it and assert their claim. In light of the proof adduced as to the industry custom for lien waivers to be given before payment has been made, the defendants' knowledge and use of the aforesaid custom, and the express agreement of the parties to employ a joint check to assure Des Plaines' payment for material we hold that Des Plaines may repudiate their lien waiver." In *Hines*, the owner, Dell, and Hines entered into an agreement under which Hines would give a lien waiver to Dell in exchange for a trust receipt, which meant that Dell agreed to act as trustee for the benefit of Hines. Hines would cancel the trust receipt upon receipt of payment from Dell. In our case, there is no trustee relationship and the holding in *Hines* does not apply.

JWP's fallback position is that the Court should impose an equitable lien in its favor. JWP makes the same argument that G & O makes for an equitable lien, and we deny it for the same reasons.

*Automatic Building Controls (ABC)*

■ ABC supplied the Debtor with lien waivers totalling $65,504 in exchange for two post-dated checks, which became non-

negotiable upon the Debtor's filing. The Debtor agrees that it owes ABC an additional sum of $7,600 for which waivers were not issued. On June 15, 1990, the Debtor issued its sworn statement listing ABC as a sub-contractor whose balance due is $7,600. ABC served its owner's notice on August 13, 1990 and recorded its lien on October 16, 1990.

The Debtor's sworn statement protects ABC to the extent of $7,600. But ABC claims a lien securing the $65,504 for which it gave lien waivers and received post-dated checks. ABC contends that the last day of its work was October 2, 1990. This would make its notice and filing timely. Mark Bevil, ABC's president testified that the work in question consisted of installing and moving temperature controls so that the system would be operational and that this was necessary to the original contract, and was not repair work. There was no documentation to support Mr. Bevil's testimony; nor did any of his employees testify. Mr. Bevil admitted that no written notice reflecting this work was ever supplied by ABC to the Debtor.

The Debtor's contention is that the work was completed on or before May 8, when the Debtor received the "final" bill, although Thomas Brady, president of the Debtor, admitted that punch list work remained to be done after that date. But notwithstanding the punch list items, Mr. Brady testified that ABC's contract must have been completed by May because the mechanical systems were operating by then and that required the prior installation and calibration of ABC's control. The Debtor submitted copies of ABC's invoices, the most recent of which is dated March 28, 1990, but these invoices are not decisive since, more contract work could have been added after that date.

There is a paucity of evidence here, but ABC, as the party asserting the lien, has the burden of proof. The Court finds that ABC's portion of the Riverway project was completed in May, 1990, and that the work ABC performed for the Debtor between May and October was warranty or repair work. As such, it does not extend the time

to file a lien and hence ABC's filing was not timely. (Also see the discussion of this issue in connection with Maram, above).

Relying heavily on *In re H.G. Prizant and Company*, 257 F.Supp. 145 (N.D.Ill.1965) and *Tonyan*, ABC claims an equitable lien. We discussed *Tonyan* in connection with the G & O claim, above. *Prizant* is a similar case. The distinguishing fact in both cases is that the owners actually paid funds to the contractor for payment to the sub-contractor. The courts impressed trusts on those funds in the contractor's hands, so that, in *Prizant*, even though the contractor filed bankruptcy with the funds in its bank account, the sub-contractor prevailed. In this case, however, the Debtor never received funds from the prime contractor for payment to ABC; therefore, there is nothing upon which to impress a trust. The Debtor's post-dated checks were no more than unsecured promises to pay, and cannot give rise to a trust.

ABC also argues that it may still assert its lien right even if the lien was not perfected. It relies upon authority allowing prime contractors to sue owners within two years, even in the absence of a recorded lien claim. ABC, however, is not a prime contractor. Finally, ABC cites *North Side Sash and Door Co. v. Goldstein*, 286 Ill. 209, 121 N.E. 563 (1918) but that opinion holds only that a sub-contractor may have a lien on moneys in the owner's hands, even when it has waived a lien on the property. The case has nothing to do with the issues before the court here.

For these reasons, excepting the amount set forth in the Debtor's sworn statement, $7,600, the balance of ABC's claim is unsecured.

### Holian Insulation

In regard to the Downers Grove project, there is no factual dispute. Holian's work was concluded on June 14, and Holian was included on the Debtor's Sworn Statement. Holian states that on September 21, 1990 it served its § 24 notice, and on September 24, 1990, it recorded its lien.

The only conflict here is illusory. Holian states that its § 24 notice was timely. In

fact, it wasn't. A section 24 notice had to be served before September 14th, within 90 days after completion. However, since Holian was listed on the Debtor's Sworn Statement, the § 24 notice requirement was satisfied. Sections 5, 22. Holian's lien filing, on September 24, was timely. Consequently, Holian has perfected its security interest, and holds a lien in the amount of $31,005.

In regard to the Riverway project, Holian did not file its lien claim. Holian asserts that it is owed $9,070 on this project and claims an equitable lien. For the same reasons explained in connection with the other claimants, we reject Holian's claim for an equitable lien.

The Debtor is directed to submit appropriate draft orders in accordance with this opinion.